UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

|   |   |
|---|---|
| IN RE CLASSICSTAR MARE LEASE LITIGATION<br><br>and<br><br>J&L CANTERBURY FARMS, LLC, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>CLASSICSTAR, LLC, *et al.*,<br><br>    Defendants. | MDL No. 1877<br><br>Master File:<br>Civil Action No. 5:07-cv-353-JMH<br><br><br><br><br>Civil Action No. 5:07-cv-349-JMH |

**MEMORANDUM OPINION AND ORDER**

**\*\*\* \*\*\* \*\*\***

This matter is before the court on the Motion for Partial Summary Judgment of Plaintiff J&L Canterbury Farms, LLC ("J&L") [5:07-cv-349-JMH, DE 77]. Defendant GeoStar Corporation ("GeoStar") has responded [5:07-cv-349-JMH, DE 80], stating its opposition to the Motion, and Plaintiff has filed a Reply [5:07-cv-349-JMH, DE 82] in further support of its Motion. The Court being sufficiently advised, this Motion is ripe for decision.

**I.   Choice of Law**

Plaintiffs have alleged both federal and state law claims in their Second Amended Complaint. "When analyzing questions of

federal law, the transferee court should apply the law of the circuit in which it is located." *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996). "When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *Id*. When a United States District Court is confronted with state law claims, that court uses the conflict of law rules of the forum state in which it sits to determine which state's substantive law will govern. *See Liew v. Official Receiver & Liquidator*, 685 F.2d 1192, 1195 (9th Cir. 1982).

In the motion before the Court, the Court is concerned with J&L's breach of contract claim. Neither party disputes that the subject contract is, by its own terms, governed by the laws of the state of Michigan. [*See* Purchase Agreement at ¶ 9, Exhibit B to Plaintiff's Motion for Partial Summary Judgment .] Under § 187 of the Restatement (Second) of Conflict of Laws, a contractual choice-of-law provision "should be honored unless (1) 'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice,' or (2) 'application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest.'" *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 398 (6th Cir. 2000). The Sixth Circuit has held that, "in a

standard commercial breach-of-contract case ..., the Kentucky courts would choose to adopt § 187 of the Restatement as their analytical framework for addressing a contractual choice-of-law clause." *Id.* at 397.

The Court has no reason to doubt that Michigan has a sufficiently substantial relationship to the parties and the transaction in this case as neither party has objected to the application of Michigan law. Further, Kentucky has a strong public policy in favor of upholding parties' bargains in all but exceptional circumstances. *See Zeitz v. Foley,* 264 S.W.2d 267, 268 (Ky. 1954) ("[C]ontracts voluntarily made between competent persons are not to be set aside lightly."). Further, to the extent that there is any argument to be made for the application of Kentucky law or the law of Pennsylvania as the law of the forum in which the transferor court sits, for that matter, Kentucky law concerning the elements of a breach of contract is largely the same as that of the state of Michigan, as is that of Pennsylvania. *See Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F.Supp.2d 841, 845 (W.D.Ky. 2007) ("The elements of a breach of contract are: (1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff. A contract is only binding upon the parties to a contract."); *Green Leaf Nursery, Inc. v. Kmart Corp.,* 485 F.Supp.2d 815, 818 (E.D.Mich. 2007) (elements of breach of contract are that "(1) a contract existed

between the parties, (2) the terms of the contract required performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury"); *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa.Super. 2005) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269 (Pa.Super. 2002)) ("A breach of contract action involves (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages."). Accordingly, the Court concludes that Kentucky courts would apply the parties' choice-of-law provision and that Michigan law applies to issues surrounding the contract between J&L and GeoStar in this case. The Court shall apply the state law of Michigan in its analysis of the breach of contract claim.

## II. Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party, which in this case is the defendant, "cannot rest on [its] pleadings," and must show the Court that "there is a genuine issue for trial."

-4-

*Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**III. Background and Discussion**

On November 14, 2003, J&L entered into a Mare Lease and Breeding Agreement (the "Mare Lease Agreement") with ClassicStar, LLC. GeoStar is ClassicStar's parent corporation. The Mare Lease Agreement provided that J&L would lease mares from ClassicStar for breeding. Any resulting foals would belong to J&L. J&L also entered into a Boarding Agreement, a Foal Agreement and a Nominee Agreement. Collectively, the Mare Lease Agreement, Boarding Agreement, Foal Agreement, and Nominee Agreement constitute J&L's "Mare Lease Interests." J&L paid ClassicStar $6,000,000 in consideration for the Mare Lease Interests.

In 2004, GeoStar offered to purchase the Mare Lease Interests held by J&L. [*See* Purchase Offer, Exhibit B to Plaintiff's Motion for Partial Summary Judgment.] Specifically, GeoStar offered to purchase the Mare Lease Interests in exchange for shares of common stock of Gastar Exploration, Ltd. ("Gastar"), valued by the parties at $3.00 per share, in a number sufficient to equal in value the price paid by J&L for the Mare Lease Interests, or 2 million shares. The agreement further provided that J&L could exercise a put and call option, effective January 1, 2007, and for thirty days

thereafter, at which time GeoStar would be obliged to purchase the shares of Gastar stock from J&L at $4.00 per share. J&L accepted the offer and documented it by entering into the 2003 Mare Lease Purchase Agreement ("Purchase Agreement"), dated August 1, 2004, which provided as follows:

> [J&L] shall sell and [GeoStar] shall purchase, the interests set forth on Schedule 1 of this [Purchase] Agreement (the "Purchased Interests"). The closing of the transaction shall occur on the Closing Date, [August 1, 2004.][1]

[Purchase Agreement, Exhibit C to Plaintiff's Motion for Partial Summary Judgment.]

Paragraph 1(e) and 1(f) of the Purchase Agreement further provide that:

> e. [J&L] hereby authorizes [GeoStar] to direct ClassicStar to record [GeoStar] as the lawful owner of the Purchased Interests on its books and records, and shall further require, authorize and instruct Wilmington [Trust] to release any security interest or lien it may

---

[1] The Purchase Agreement was dated August 1, 2004. However, it appears that it was actually drafted and executed well after that date. [*See* Exhibit K to Plaintiff's Reply, September 9, 2004 email from GeoStar's counsel to Kevin Coccetti (indicating that agreement was complete, with exception of signature of parties, and forwarding "redlined" Purchase Agreement, changing closing date from July to August); *see also* Exhibit L to Plaintiff's Reply, October 21, 2004 letter from GeoStar's counsel (purportedly forwarding "the executed Purchase Agreement with GeoStar regarding the sale of your mare lease interests in exchange for Gastar common stock").] GeoStar argues that the agreement contemplated a future closing date, but that argument defies logic when the chronological development of the Purchase Agreement, as well as its language, is considered.

> have on the Purchased Interests. [J&L] also agrees to promptly take such actions, and execute and deliver to [GeoStar], Gastar, ClassicStar or Wilmington [Trust] such documents as shall be reasonably requested to effect such transfer of ownership and release of liens with respect to the purchased interests.
>
> f. Upon execution of this [Purchase] Agreement by both parties, [GeoStar] hereby agrees to remit the Exchanged Shares to Gastar with a request to transfer the ownership of the Exchanged Shares to [J&L] on the books and records of Gastar, and to request that Gastar reissue Shares representing the Exchanged Shares to [J&L]. [GeoStar] further agrees to remit the Cash Consideration to [Canterbury] within fifteen (15) days of the Closing Date. [GeoStar] also agrees to promptly take such actions, and execute and deliver to [J&L], Gastar, ClassicStar or Wilmington [Trust] such documents as shall be reasonably requested to effect such transfer of ownership with respect to the Exchanged Shares.

[*Id.*] The Purchase Agreement also affirmatively represented that GeoStar owned the Gastar shares and that GeoStar was not under any legal or other disability that would prevent it from carrying out its obligation to deliver the shares. [*Id.*]

GeoStar never delivered or effected the transfer of the Gastar shares to J&L, notwithstanding J&L's May 10, 2006, demand that Geostar do so. On June 19, 2006, J&L instituted an action in Delaware Chancery Court in which it sought to compel GeoStar to provide it with the Gastar stock. In Answer to that Complaint, GeoStar admitted that the Purchase Agreement is a valid, binding contract and that J&L had performed all of its obligations pursuant

to the Purchase Agreement.

Notwithstanding the fact that GeoStar never delivered the Gastar shares, J&L sent a letter, dated December 28, 2006, on January 3, 2007, in which it advised GeoStar that it was exercising its put option for all 2,000,000 shares of stock governed by the Mare Lease Purchase Agreement and demanding payment of $4.00 per share of Gastar stock that was to have been transferred to J&L under the Purchase Agreement. GeoStar did not honor that request.

GeoStar concedes that the Purchase Agreement is a valid and binding contract that describes the terms and conditions of a transaction but opines that they were to be reflected in a future contract of conveyance at closing. According to GeoStar, because the Purchase Agreement does not contain any self-operative language or language of conveyance, e.g., "ABC Corp. hereby conveys, grants, assigns, etc.," further action, akin to a real estate closing, was necessary on the part of the parties. Thus, GeoStar argues that the obligation to convey the Gastar shares never arose because the conditions precedent to the agreed upon exchange never occurred, particularly because no closing contemplated in the Purchase Agreement or the subsequent transfer of shares anticipated by the Agreement ever occurred. In this sense, GeoStar opines that neither party gained or lost anything as the situation remains *status quo ante* to this day. The Court disagrees.

The Purchase Agreement states that J&L "shall" sell and that

-8-

GeoStar "shall" purchase the shares upon the closing and provides additional obligations or conditions precedent which each party had to fulfill in connection with the contemplated conveyances. There is not, however, any indication that a "closing," in the sense of a meeting in a common location with a flurry of signing, assigning, and shuffling of papers was necessary. Rather, the Purchase Agreement provided that "[J&L] hereby authorizes [GeoStar] to direct ClassicStar to record [GeoStar] as the lawful owner of the Purchased Interests on its books and records." In other words, the extent that there was to be an affirmative action to effect the transfer, J&L authorized GeoStar to take that action and, effectively, relinquished its interest in the Mare Lease shares as of August 1, 2004. Further, while J&L was required to "authorize or instruct Wilmington [Trust] to release any security interest or lien" and "execute and deliver . . . such documents as shall be reasonably requested to effect such transfer of ownership and release of liens with respect to the Purchased Interests," there is no evidence that J&L failed to do so, that such documents were requested, or that any further action as described in that paragraph was ultimately necessary to effect the transfer.

Clearly, J&L's obligations under the Purchase Agreement have been met. This conclusion is bolstered by virtue of GeoStar's admission in a state court action brought by J&L against GeoStar concerning the Purchase Agreement: "J&L performed its obligations

pursuant to the [Purchase Agreement.]" [*See* Complaint and Answer, at ¶¶ 17, 22, 29, 30, *J&L Canterbury Farms, LLC v. GeoStar Corporation*, C.A. No. 2233-N (Del. Ch. June 19 and July 19, 2006), Exhibits F and G to Plaintiff's Motion for Partial Summary Judgment.]

GeoStar argues that these statements from the proceeding in Delaware cannot be used against it in this case, relying on *Pennsylvania R. Co. v. City of Girard*, 210 F.2d 437, 440 (6th Cir. 1954). According to GeoStar, pleadings are only admissions "in the action in which they were filed," but the opinion in *Girard* does not stand for that proposition. Rather, it provides that "[t]he fact that the original petition was withdrawn and that these statements were eliminated in the amended cross-petition is immaterial, for pleadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed." It does not address whether pleadings in one case, not amended or withdrawn, are admissible against the pleader in another matter, particularly where the same parties are litigating about the same dispute. In this regard, this Court understands that statements made in pleadings in one matter can serve as admissions in another matter. *See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815 (Ky. 2000) (quoting *Williams v. Union Carbide Corp.*, 790 F.2d 552, 556 (6th Cir. 1996); *Dixie Sand & Gravel Corp. v. Holland,* 255 F.2d 304, 310 (6th Cir. 1958)

-10-

("Allegations in pleadings in other actions are admissible in evidence as admissions, but are not conclusive, and should be considered in connection with any other evidence which may be offered in explanation"); *see also* CJS Evidence § 476 ("a positive statement of an evidentiary fact made by a party in a pleading in another case may be sufficient to establish a fact as undisputed on a motion for summary judgment."). In this instance, the Court must consider and has considered GeoStar's prior admission that J&L had fully performed its obligations and relied upon GeoStar's promises to provide it with the Gastar shares in light of the language of the contract and the other evidence provided to this Court, none of which indicates that GeoStar ever demanded or expected J&L to take any further action than it did to trigger GeoStar's obligations under the Purchase Agreement.

Indeed, notwithstanding the fact that the Purchase Agreement provided for an August 1, 2004, closing date, it was drafted and executed well *after* August 1, 2004. The Court is, thus, left to conclude that the Purchase Agreement memorialized a transaction that had already occurred for it would be incredible that GeoStar's counsel would have the Purchase Agreement executed by GeoStar and delivered to all parties in October of 2004, if GeoStar believed—as it asserts now—that it had no obligations under the Purchase Agreement because some event had not occurred on August 1, 2004.

In light of these facts, the Court turns to Michigan law which

teaches that "the elements of a breach of contract claim are the following: (1) a contract existed between the parties, (2) the terms of the contract required performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F.Supp.2d 815, 818 (E.D.Mich. 2007). There is no dispute that a contract existed between the parties, that the terms of the contract, the Purchase Agreement, required J&L to relinquish its interest in the Mare Lease shares, and that, in exchange, for that relinquishment, GeoStar was to provide shares of Gastar stock valued at $6,000,000.00, which J&L could, if it wished, sell back to Gastar for a sum of $8,000,000.00 in the thirty day period following January 1, 2006. GeoStar has stated no argument to suggest that damages for either the first GeoStar breach (the failure to transfer the Gastar shares in the first instance) or the second GeoStar breach (the failure to honor the put-call option) should not be valued, as the parties agreed, at $8,000,000.00. An award in this sum will place J&L in the position it would have occupied but for GeoStar's failure to honor the parties' agreement.

**IV. Conclusion**

For all of the reasons stated above, J&L's Motion for Partial Summary Judgment on its Breach of Contract, Count VI of the Second Amended Complaint, shall be granted.

Accordingly, **IT IS ORDERED** that J&L's Motion for Partial

Summary Judgment [5:07-cv-349-JMH, DE 77] is **GRANTED**.

This the 10th day of August, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge